UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANHEUSER BUSCH COMPANIES, INC., n/k/a ANHEUSER BUSCH COMPANIES, LLC, GROUP INSURANCE PLAN FOR CERTAIN EMPLOYEES OF ANHEUSER-BUSCH COMPANIES, INC. AND ITS SUBSIDIARIES, AND GROUP INSURANCE PLAN FOR CERTAIN RETIREES OF ANHEUSER-BUSCH COMPANIES AND ITS SUBSIDIARIES,<br><br>　　　　　Plaintiffs,<br>　v.<br><br>CONNECTICUT GENERAL LIFE INSURANCE COMPANY, d/b/a CIGNA,<br><br>　　　　　Defendant. | Civil Action No. 12-CV-1333<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs Anheuser Busch Companies, Inc., n/k/a Anheuser Busch Companies, LLC ("Anheuser Busch"), Group Insurance Plan for Certain Employees of Anheuser-Busch Companies, Inc. and its Subsidiaries, and Group Insurance Plan for Certain Retirees of Anheuser-Busch Companies, Inc. and its Subsidiaries (collectively "Plan") hereby sue Defendant Connecticut General Life Insurance Company, d/b/a Cigna ("Cigna") and allege as follows:

### THE PARTIES

1.　Anheuser Busch was a corporation duly organized and existing under the laws of the State of Delaware. Anheuser Busch is currently a limited liability company organized and existing under the laws of the State of Delaware. Anheuser Busch's principal address is One Busch Place, St. Louis, Missouri, 63118.

1

2. Plaintiff "Group Insurance Plan for Certain Employees of Anheuser-Busch Companies, Inc. and its Subsidiaries and Group Insurance Plan for Certain Retirees of Anheuser-Busch Companies, Inc. and its Subsidiaries" is a welfare benefit plan.

3. Cigna is, and at all times relevant herein was, a corporation duly organized and existing under the laws of the State of Delaware. Plaintiffs are informed and believe that Cigna's principal address is 1601 Chestnut Street, Philadelphia, Pennsylvania, 19192.

### Jurisdiction and Venue

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1). Anheuser Busch makes claims against Cigna under the Employee Retirement Income Security Act of 1974, ("ERISA"), 29 U.S.C. §§ 1001-1461. This Court has supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e)(1).

### Factual Allegations

6. Anheuser Busch provides healthcare and prescription drug benefits to employees and former employees and their eligible dependents ("Participants"). It does so though the Plan, which offers multiple healthcare options to beneficiaries. Except for certain HMO/PPOs offered by Anheuser Busch, the healthcare programs offered to Participants are "self-funded" in the sense that Anheuser Busch and Participants contribute money to the Plan that is used to pay benefits.

7. Anheuser Busch is the sponsor and administrator of the Plan and retains and exercises authority and control with respect to the management and administration of the Plan. This authority and control includes the rights to interpret, amend and alter the terms of the Plan. Anheuser Busch is a fiduciary of the Plan.

8. The Plan is funded through periodic contributions by Participants and Anheuser Busch. The amount of such contributions is determined by, among other things, actual Plan costs or expenditures in prior periods. The funding then is used to pay claims of beneficiaries. Thus, the money used to pay providers that is at issue in this case comes from Anheuser Busch and its employees and former employees.

9. Effective January 1, 2006, Anheuser Busch entered into an administrative services agreement ("ASA") with Cigna under which Cigna agreed to administer the Plan on behalf of Anheuser Busch through December 31, 2008. See ASA, attached as Exhibit 1. Under the ASA, Anheuser Busch had the right to extend the ASA for two additional one-year terms. Anheuser Busch exercised its rights under the ASA and extended the ASA through December 31, 2010.

10. The terms of the Plan are incorporated into the ASA. Ex. 1, ¶ 19(a).

11. Under the ASA, Anheuser Busch agreed to pay Cigna an Administrative Services Fee. Ex. 1, ¶ 3. Anheuser Busch has paid all Administrative Services Fees due and so has performed all its material obligations under the ASA.

12. Under the ASA, Cigna had discretion and control over the denial or allowance of all claims under the Plan. Cigna also had discretion and control over administrative procedures and over claims data. Cigna was a fiduciary of the Plan. Thus, Cigna decided whether to pay claims. When it decided to pay, the money came from the Plan.

13. Cigna possessed skill and knowledge regarding the administration and payment of claims that was superior to the knowledge of Anheuser Busch. Cigna was aware that Anheuser Busch was relying on Cigna's superior knowledge and skill to administer the Plan. Cigna is one of the largest health service companies in the US market and has been providing services for over 125 years. Cigna holds itself out as being "empowered by experience in the field and supported by industry and health experts." See www.Cigna.com.

3

14. Under the ASA, Cigna agreed to perform its services "consistent with the skill and care reasonably expected of administrators experienced in providing similar services to plans of similar size and characteristics."  Ex. 1, ¶ 2(b).  If Cigna failed "to meet these professional standards, Contractor [Cigna] shall correct or revise any error or deficiency to the extent reasonably possible, and if applicable, reimburse and/or credit A-B [Anheuser Busch] or the Plans, as appropriate, with any monies due A-B [Anheuser Busch] or the Plans because of the error or deficiency."  Id.

15. Under ERISA, Cigna had a duty to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a).

16. Under the ASA, Cigna had a duty to "use all reasonable efforts to cooperate with Anheuser Busch's [A-B's] other applicable service providers and with Participants' benefit providers in the performance of its obligations" under the ASA.  Ex. 1, ¶ 5(a).

17. Under the ASA, Cigna has a duty to maintain records related to its services under the ASA for at least seven years after the date the service was rendered or a final claim determination was made.  Ex. 1, ¶ 6(b).

18. Under the ASA, Anheuser Busch has the right to an audit of records.  "In addition" Anheuser Bush has a right to "other examination" of records held by Cigna.  Ex. 1, ¶¶ 6 (b), (d), and (e).  In addition, a fundamental purpose of the ASA was to assist Anheuser Busch in performance of its fiduciary duties to the Plan.  An important part of that duty is to examine records regarding claims whether by audits or "other examination."  Id.

## CIGNA FAILED TO MEET ITS OBLIGATIONS

19. In 2010, Anheuser Busch first became aware of anomalies in the claims paid by Cigna.  It appeared that claims paid by Cigna were excessive when compared to

4

claims paid by other third party administrators of Anheuser Busch plans and industry norms and that Cigna was not properly fulfilling its duties under the ASA or ERISA.

20. Anheuser Busch, through its service provider, investigated the anomalies. Based upon an initial review of the data available to the Plan and Anheuser Busch, Anheuser Busch confirmed that Cigna was paying unusually high amounts of money for certain kinds of claims when compared to industry norm and the other Plans of Anheuser Busch administered by other companies. Due to the large population of Participants in the Plan and accounting for the mix of beneficiaries in the Plan, one would expect the claims to be in line with industry average; however, they were not for the Cigna administered Plan. The reasonable conclusion reached by Anheuser Busch was that Cigna was not administering the Plan consistent with the ASA or the ERISA provision described above. Anheuser Busch has identified about $24MM in suspect charges.

21. For instance, the industry standard is that 5-6% of all hospital admissions are for one day. This is an important metric because a one-day hospital stay may be an item that could be addressed on an out-patient basis at less expense. For the Cigna-administered Plan, approximately 13% of all hospital admissions were for one-day length of stays. Anheuser Busch asked Cigna to explain this difference by providing information about these claims, and Cigna refused.

22. As another example, the amount paid for claims by plans similar to the one at issue related to certain identified infection complications (such as Methicillin-resistant Staphylococcus aureus infections) and expenditures related to infections associated with other health problems should be low. In 2009 and 2010, Cigna paid $6.5MM for claims related to infection complications, including complications with associated health problems. This suggested to Anheuser Busch that Cigna was paying to treat infections that were caused by a doctor or the hospital. Payments to providers to treat conditions they caused are not proper.

5

23. For a similar plan in 2009, a standard cost per hospital day was $2,300. This means that for every day a beneficiary is in the hospital, a plan would spend an average of $2,300 for hospital care for the day. Cigna paid much more than $2,300 per day on hospital care for each day that a beneficiary was in the hospital. In fact, the amount that Cigna paid in excess of $3,000 per day for hospital care for beneficiaries was nearly $16MM.

24. Cigna has refused to justify any of these unexpected payments by providing detailed information from the claims, causing Anheuser Busch to conclude that the payments were not appropriate. Had Cigna acted with the care, skill, prudence and diligence that a prudent person acting in a like capacity would have acted, it would not have paid these claims. The only reasonable explanation for the irregularities in the claims data is Cigna's refusal to provide detailed information and Cigna's failure to meet its fiduciary obligations.

**Anheuser Busch and the Plan Attempt to Learn the Scope of Cigna's Breach**

25. Anheuser Busch wanted to perform a particular analysis ("Analysis") on the claims that Cigna paid on behalf of the Plan. The Analysis would use the Plan and Anheuser Busch's own claims data to identify abnormalities and to ensure quality of care. The Analysis could identify whether certain claims that were paid by the Plan should not have been paid.

26. An administrator experienced in providing similar services to a plan of similar size and characteristics as the Plan would have agreed to an Analysis in light of the findings. A prudent person acting in a like capacity as Cigna and who was familiar with the situation would have agreed to an Analysis.

27. Anheuser Busch could not perform an Analysis without cooperation from Cigna because only Cigna had access to all of the claims information necessary to perform an Analysis. An Analysis would have allowed Anheuser Busch to identify what

6

portion of the claims paid by Cigna, including the $24MM discussed above, should not have been paid by the Plan.

28.	In June 2011, Anheuser Busch (through its service provider) requested that Cigna allow it access to additional claims information, such as clinical notes, to perform an Analysis.  Cigna refused.  Cigna claimed that it would not agree to these types of reviews in general and that it would not be agreeable to moving forward at this time.

29.	In July 2011, Anheuser Busch responded to Cigna's refusal.  Anheuser Busch reminded Cigna of its obligations under ERISA and the ASA, including Cigna's responsibility to ensure that the Plan is managed prudently.  Specifically, Anheuser Busch told Cigna that:

> "As I am sure you can understand, Anheuser Busch [A-B] has a significant interest in ensuring that neither participant contributions nor its own are subject to fraud, duplication or other wasteful practices.  We would think that Cigna, both from a contractual standpoint as well as from the standpoint of the recognition of its duties and responsibilities under ERISA, would be equally interested in avoiding such errant payments from the plan."

30.	Anheuser Busch also reminded Cigna that the terms of the ASA did not give Cigna the legal authority to prohibit Anheuser Busch from using its own data to analyze claims for atypical practices and patterns.  Anheuser Busch told Cigna that absent Cigna's cooperation, it would be impossible to determine whether any of the claims paid were fraudulent, wasteful, abusive and/or needlessly duplicative.  Anheuser Busch also told Cigna the following:

> "Such cooperation is mandated by Cigna's contractual obligation to administer the plan as a prudent administrator would by applying the level of skill and reasonable care expected of administrators experienced in providing similar services to plans of similar size and characteristics and by adhering to its obligations to ensure applicable cost containment measures.  Moreover, such cooperation is necessary to ensure that all payments from the plan to third parties are being made solely in the interest of eligible plan members and are reasonable.  Wasteful spending

out of the plan to third parties would not satisfy this obligation.  Cigna has a responsibility to ensure that the plan is managed prudently, including ensuring that only legitimate payments have been made to providers.  The [Analysis] tool can assist Cigna in fulfilling this obligation by identifying questionable payments."

31. Cigna agreed to review sample Analysis data in order to determine if Cigna would cooperate with the Analysis.  The data was sent to Cigna in August 2011.

32. Cigna reviewed the data and determined that it would not cooperate with the Analysis.  Cigna had discretionary authority over the claims information.  Cigna refused Anheuser Busch access to the additional claims information in order to perform an Analysis as an exercise of its discretion as a fiduciary and under the ASA.

33. On September 30, 2011, Anheuser Busch again reminded Cigna of its legal obligations by saying:

> "Cigna's failure to cooperate in the investigation of the identified anomalies is a breach of its fiduciary obligations owed to the Plan and may well hinder Anheuser-Busch's and the Plan's ability to recover monies rightfully owed to the Plan.
> \*       \*       \*       \*       \*
> All of the Plan's fiduciaries, including and perhaps especially Cigna in its role as the Plan's claims administrator, have an obligation to take all steps necessary to ensure that the Plan's assets, including participant contributions, are not used in a wasteful, unproductive or fraudulent manner.  This responsibility cannot be satisfied simply by identifying changes that might reduce waste or fraud in the future.
>
> In addition to its responsibilities as a Plan fiduciary, we note that Cigna's cooperation is also required by the terms of our agreement.  Cigna's basic and fundamental obligation under our agreement is to administer the Plan's medical claims as a prudent administrator would by applying the skill and care reasonably expected of administrators experienced in providing similar services to plans of similar size and characteristics (See Section 2(b)).  Cigna, as a prudent administrator, has an obligation to investigate and reconcile any and all abnormalities and other potentially wasteful practices identified by Anheuser-Busch, the Plan or which otherwise come to light."

34. On September 30, 2011, Anheuser Busch also provided Cigna with formal notice in accordance with Paragraph 5(b) of the ASA. Paragraph 5(b) of the ASA requires the parties to give notice to one another if a dispute arises with reference to the interpretation of the ASA. As soon as reasonably possible thereafter, individuals with decision-making authority for each party shall attempt in good faith to negotiate a resolution. In the event the dispute remains unresolved within sixty days after the date of notice, the parties may proceed with any and all available legal remedies. Ex. 1, ¶ 5(b). Anheuser Busch requested that Cigna advise it who it should contact to attempt to reach resolution during the sixty day window.

35. Cigna advised Anheuser Busch of the correct contact person, and Anheuser Busch and Cigna met telephonically on November 14, 2011, and November 30, 2011, in a good faith attempt to negotiate a resolution.

36. On December 6, 2011, Cigna informed Anheuser Busch that it would not support the Analysis and would not otherwise cooperate in this matter.

37. All preconditions to filing suit under the ASA have been satisfied.

COUNT I - BREACH OF FIDUCIARY DUTY UNDER ERISA

38. Anheuser Busch and the Plan reincorporate by reference the allegations contained in paragraphs 1 through 37 above as though those allegations were fully set forth herein.

39. Cigna is a fiduciary under ERISA with respect to the Plan.

40. Anheuser Busch is a fiduciary with respect to the Plan.

41. The Plan is an ERISA plan pursuant to 29 U.S.C. § 1002.

42. As an ERISA fiduciary, Cigna had a duty to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man

9

acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a).

43. Cigna violated its fiduciary duty under ERISA in two ways. First, Cigna violated its fiduciary duty by failing to protect the assets of the Plan and by paying claims that should not have been paid. As an example, Cigna paid claims that should not have been paid in areas, including but not limited to, the following: (a) paying more claims for one-day hospital stays than reasonable; (b) paying higher payments per day for each day of hospital stays than reasonable; and (c) paying for questionable infection complications with associated health problems. A prudent administrator acting in circumstances similar to Cigna would not have paid all of the claims paid by Cigna.

44. Second, Cigna violated its fiduciary duty by failing to cooperate in Anheuser Busch's investigation of identified anomalies. Cigna, as a fiduciary, had a duty to investigate the identified anomalies. Cigna exercised (and violated) its fiduciary duty when it refused to provide the requested information.

45. A prudent administrator acting in circumstances similar to Cigna would have provided claims data to Anheuser Busch and would have cooperated with the Analysis.

46. As a result of Cigna's breaches of fiduciary duty, the Plan suffered losses in an amount to be determined. Pursuant to 29 U.S.C. § 1109(a), Cigna is liable to "make good" on any losses to the Plan caused by its breaches of its fiduciary duties and such other statutory and equitable relief as authorized by law.

WHEREFORE, Anheuser Busch, on behalf of itself and the Plan, prays for judgment against Cigna for the following:

1. An award or other relief requiring Cigna to compensate the Plan for all losses arising from its breaches of its fiduciary duties pursuant to 29 U.S.C. § 1109(a);

  2. Equitable relief in the form of an injunction which requires Cigna to provide all claims data to Anheuser Busch and which requires Cigna to cooperate in an examination of the claims data, including cooperation with an Analysis;

  3. An award of reasonable attorneys' fees and costs in connection with the commencement and prosecution of this action pursuant to 29 U.S.C. § 1132;

  4. Such other and further relief as the Court may deem just and proper.

COUNT II - BREACH OF CONTRACT

  47. Anheuser Busch and the Plan incorporate by reference the allegations contained in paragraphs 1 through 46 above as though those allegations were fully set forth herein.

  48. Anheuser Busch and Cigna entered into a written contract (the ASA), for consideration.  The Plan was a beneficiary of the ASA.

  49. Under the ASA, Cigna promised to "use all reasonable efforts to cooperate with Anheuser Busch's [A-B's] other applicable service providers and with Participants' benefit providers in the performance of its obligations." Ex. 1, ¶ 5(a).

  50. Cigna also promised to perform its services "consistent with the skill and care reasonably expected of administrators experienced in providing similar services to plans of similar size and characteristics."  Ex. 1, ¶ 2(b).

  51. The ASA requires Cigna to maintain records, such as the claims data, beyond the term of the ASA. Ex. 1, ¶ 6.  Anheuser Busch has the right under the ASA to conduct an "audit or other examination" of the claims data. Id. at ¶ 6 (b), (d).  An Analysis qualifies as an "other examination" under the ASA.

  52. Implied in the ASA is a covenant of good faith and fair dealing that required Cigna to cooperate with Anheuser Busch to perform and achieve the expected benefits of the ASA.  The fundamental purpose of the ASA is to assist Anheuser Busch

in performance of its fiduciary duties to the Plan. An important part of that duty is to examine records regarding claims whether by audits or "other examination."

53. The purpose of the ASA is also to ensure that Anheuser Busch discharges its duties as Administrator and to ensure that the medical benefits under the Plan are administered with skill and care. Anheuser Busch expected Cigna to cooperate with Anheuser Busch in performance and achievement of the ASA's objectives.

54. Cigna had discretion to provide the claims information necessary to perform an Analysis. The ASA calls for Cigna to cooperate with Anheuser Busch and provide this information.

55. Cigna breached the implied covenant of good faith and fair dealing when it refused to provide Anheuser Busch with claims data. Cigna's actions denied Anheuser Busch the expected benefits of the ASA, which was to assist Anheuser Busch in performance of its fiduciary duties. As a result of the breach, Anheuser Busch and the Plan have been damaged.

56. Cigna breached the express terms of the ASA in two ways. First, Cigna breached the terms of the ASA by failing to perform its services in a manner consistent with the skill and care reasonably expected of administrators experienced in providing similar services and by paying claims that should not have been paid. For example, Cigna paid claims that should not have been paid in areas, including but not limited to, the following: (a) paying more claims for one-day hospital stays than reasonable; (b) paying higher payments per day for each day of hospital stays than reasonable; and (c) paying for questionable infection complications with associated health problems.

57. Second, Cigna breached the ASA by failing to cooperate with the Analysis and failing to provide claims information to Anheuser Busch.

58. As a direct and proximate result of Cigna's breaches of the ASA, Anheuser Busch and the Plan have been damaged in an amount according to proof at trial.

59. Anheuser Busch complied with all of the terms, conditions and other requirements of the ASA. All conditions precedent to filing this lawsuit have been met.

WHEREFORE, Anheuser Busch and the Plan pray for judgment against Cigna for the following:

1. Compensatory damages against Cigna in an amount according to proof;

2. An award of reasonable attorneys' fees and costs in connection with the commencement and prosecution of this action; and

3. For such other and further relief as the Court may deem just and proper, including an injunction.


Dated:  July 25, 2012                                          Respectfully submitted,

                                                               DOWD BENNETT LLP

                                                           By: /s/ James F. Bennett
                                                               James F. Bennett, #46826MO
                                                               Jennifer L. Aspinall, #56379MO
                                                               7733 Forsyth, Suite 1410
                                                               St. Louis, Missouri 63105
                                                               Telephone: (314) 889-7300
                                                               Facsimile: (314) 863-2111

                                                               Attorneys for Plaintiffs